**In the Matter of Charles W. LAHEY.**

**No. 71S00–9405–DI–449.**

Supreme Court of Indiana.

Sept. 17, 1999.

**ORDER GRANTING PETITION FOR REINSTATEMENT**

The petitioner, suspended attorney Charles W. Lahey, has petitioned this Court for reinstatement to the Bar of this state. The Indiana Supreme Court Disciplinary Commission, after reviewing findings of fact and conclusions of law submitted by a hearing officer who conducted evidentiary hearing on the petitioner's petition for reinstatement, has recommended to this Court that the petitioner be reinstated. This matter is now before us for final resolution.

The petitioner, admitted to the Bar of this state in 1975, was suspended for a period of not less than three years for attorney misconduct. *Matter of Lahey*, 660 N.E.2d 1022 (Ind.1996). During adjudication of that case, the petitioner was suspended *pendente lite* on July 22, 1994, pursuant to Ind. Admission and Discipline Rule 23(11.1). Accordingly, the petitioner has been continuously suspended from the practice of law for over five years. The basis for the petitioner's suspension was his 1994 federal conviction of conspiracy to obstruct justice, in violation of 18 U.S.C. Section 371. Specifically, the petitioner's conviction was based on allegations that, in response to an Internal Revenue Service audit to investigate discrepancies between his reported income and the amount of his spending, the petitioner informed IRS investigators that his brother-in-law and other family members provided him with substantial non-taxable cash gifts. The indictment alleged that the petitioner and his brother-in-law agreed that the latter would provide to the grand jury false testimony supporting the petitioner's statements to the IRS.[1] The petitioner was sentenced to ten months' imprisonment along with two years of supervised release. In the disciplinary action underlying the present petition for reinstatement, the petitioner was found to have violated Ind. Professional Conduct Rule 8.4(b), which provides that it is professional misconduct for a lawyer to engage in criminal acts which reflect adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.

In order for a suspended attorney, where that suspension resulted from attorney misconduct, to be reinstated to the practice of law under Admis.Disc.R. 23(4), the petitioner must demonstrate by clear and convincing evidence the following:

(1) that the petitioner desires in good faith to obtain restoration of his privilege to practice law;

(2) that the petitioner has not practiced law in this State or attempted to do so since he or she was disciplined;

(3) that the petitioner has complied fully with the terms of the order for discipline;

(4) that the petitioner's attitude towards the misconduct for which he or she was disciplined is one of genuine remorse;

(5) that the petitioner's conduct since the discipline was imposed has been exemplary and above reproach;

(6) that the petitioner has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and will conduct himself or herself in conformity with such standards;

(7) that the petitioner can be safely recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and officer of the Courts;

(8) that the disability has been removed, if the the discipline was imposed by reason of physical or mental illness or infirmity, of the use of or addiction to intoxicants or drugs;

---

**1.** The petitioner's testimony at hearing of this matter sheds additional light on the events leading to the perjured testimony:

> I spoke to [the brother-in-law] the night before [his grand jury testimony], and he told me that he was going to commit perjury. He told me that he had this story about how he was going to wrap up all of the—all of these facts, you know. He was going to make everything consistent, everything that I had ever given—that I had filed on a financial statement, anything that he had ever filed on a financial statement. And I knew it wasn't right, and I knew that it wasn't true, and that what he was going to tell them, unfortunately, not only didn't— wasn't truthful, I mean it wasn't even good lying.... I didn't stop him. I let him go and—I didn't even threaten him with turning him over to the authorities, and he walked out of there.

(9) that the petitioner has taken and passed the Multistate Professional Responsibility Examination (MPRE) with a scaled score of eighty (80).

The hearing officer found that the petitioner passed the MPRE with the requisite score and that disability was never an issue. She found further that the respondent ceased practicing law before the effective date of his *pendente lite* suspension and removed from his office all indicia that he was an attorney, and that he had not practiced or attempted to practice law since his suspension.

Other evidence was offered at hearing to demonstrate that the petitioner's attitude towards the misconduct for which he was disciplined is one of genuine remorse; that he has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and will conduct himself in conformity with such standards; and that he can be safely recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and officer of the Courts.

With the elements of Admis.Disc.R. 23(4) in mind, the present fitness to practice law of an attorney seeking reinstatement must be considered in light of the offenses for which he or she was disciplined. *Matter of Gutman*, 599 N.E.2d 604, 608 (Ind.1992). The analysis involves a balancing process in which on one side of the scale we place the seriousness of the misconduct and on the other, the petitioner's subsequent conduct and his present character. The more serious the misconduct, the greater its negative impact on future rehabilitation and eventual reinstatement, the greater the petitioner's burden of proof to overcome the implication of unfitness that is conjured by the misconduct. *Id.*

The petitioner's involvement in a conspiracy to obstruct justice with the goal being to defraud the federal government implicates virtually every professional quality pertaining to integrity needed of an officer of the court. It demonstrates a willingness to lie to a tribunal in pursuit of personal gain. It also reflects a deep dimension of premeditated criminal scienter which supports a very strong implication of unfitness. *See Matter of Lahey*, 660 N.E.2d at 1023 ("The crime for which the [petitioner] was convicted indicates that he formed an intent to accomplish a specific criminal act and maintained that state of mind over a significant period of time.") However, to the extent that suspension for a period of time reflects the relative seriousness of the misconduct, it carries the implication that the petitioner could be rehabilitated. *Gutman*, 599 N.E.2d at 609.

The petitioner testified at hearing that he never discussed his criminal conviction with anyone in the legal community because he was "so ashamed of the whole thing . . ." He has since paid the IRS over $40,000 in restitution. He acknowledged that his misconduct was a "failure both personally and professionally." [2] The petitioner readily acknowledged that he was fully aware that his brother-in-law was planning to offer false testimony, that he knew such conduct was wrongful, and that he tacitly consented to it anyway. He accepts all responsibility for his actions. The hearing officer was persuaded that the petitioner's expressions of remorse were

---

**2.** We are especially persuaded that the petitioner's remorse is genuine and that he has a proper understanding of the standards required of lawyers because of the following statement excerpted from the record by the hearing officer:

"... everything I got out of this thing is well deserved. I don't have a single complaint about that. I have no complaints about that. I am not a victim. I wasn't—my rights weren't run roughshod over by the government or anything else. I got exactly what I deserved. It's the other people that got a lot more than they deserved that bothers me."

sincere. Local bar members turned out in legion at hearing of this matter to profess their confidence in the petitioner and state that he should be once again allowed to practice. These facts persuade us that the petitioner's remorse is genuine, that he has a proper understanding of and attitude towards the standards imposed upon members of the Bar, and that he can be safely recommended to the profession.

The Commission pointed out at hearing that the petitioner never revealed his true motivations for his actions and that he failed to admit that he expressly or explicitly agreed with his brother-in-law that his brother-in-law would testify falsely on his behalf. As pointed out by the hearing officer, however, the federal courts found only that the lies were coordinated by the two, not that the petitioner actively conspired with his brother-in-law to obstruct justice. This finding not only corroborates the petitioner's version of the events, but also in our minds lessens to a certain degree the intrinsic seriousness of his actions as that measure impacts his fitness for reinstatement. We are also cognizant of the fact that the petitioner, despite his formal suspension for a period of not less than three years, has actually been suspended for over five.

Based on the aforementioned considerations, we find that the petitioner has demonstrated by clear and convincing evidence his satisfaction with the elements of Admis.Disc.R. 23(4) and that Commission's recommendation should be accepted. Accordingly, the petitioner, Charles W. Lahey, is hereby reinstated to the practice of law, effective immediately.

SHEPARD, C.J., and SELBY and BOEHM, JJ., concur.

DICKSON and SULLIVAN, JJ., dissent.